MAXWELL SHAPIRO WOOLEN CO., INC. *vs.* AMEROTRON
CORPORATION.

Suffolk.    April 7, 1959. — May 19, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Arbitration.    Contract*, For arbitration, Validity, Relieving against li-
ability for fraud.  *Jurisdiction*, By consent or waiver.  *Fraud.    Es-
toppel.    Res Judicata.    Judgment.    Public Policy.    Conflict of Laws.*

Provisions of a contract between a Massachusetts corporation and a
New York corporation doing business with each other in those States,
that "any controversy or claim arising under or in relation to" the
contract should "be settled by arbitration . . . held in the City of
New York, in accordance with the laws of the State of New York, and
the rules" of any one of three named arbitration organizations, and
that the parties to the contract "consent to the jurisdiction of the
Supreme Court of . . . New York," were valid and binding in, and
consistent with the public policies of, Massachusetts and New York.
[258]

Even if a provision in a contract for submission to arbitration of any
controversies or claims "arising under or in relation to" the contract
were construed to include submission of an issue of fraud inducing the
making of the contract, such provision would not constitute an agree-
ment by one party to relieve the other from liability for the other's
own fraud.  [259–260]

In an action for deceit brought in Massachusetts by a buyer against the
seller of goods sold under a contract providing that "any controversy
or claim arising under or in relation to" the contract should "be
settled by arbitration . . . in accordance with the laws of . . . New
York" and arbitration organization rules and that the parties to the
contract "consent to the jurisdiction of the Supreme Court of . . .
New York," the seller was not estopped to assert the validity and con-
clusiveness of a judgment of the Supreme Court of New York con-
firming an award in favor of the seller, following arbitration at its de-
mand of "all claims and controversies" relating to the contract and
the "merchandise . . . shipped thereunder," simply because the seller
asserted in the New York proceedings claims based on "extra in-
voices" for goods "not shipped" which the buyer could have but did
not contest in such proceedings.  [260–261]

A judgment of the Supreme Court of New York, confirming an arbitra-
tion award made there in favor of a seller against the buyer of goods
sold under a contract providing that "any controversy or claim aris-

ing under or in relation to" the contract should be settled by arbitration held in New York and in accordance with the laws of New York and arbitration organization rules and that the parties to the contract "consent to the jurisdiction of the Supreme Court of . . . New York," barred maintenance in Massachusetts by the buyer against the seller of an action for deceit inducing the buyer to enter into the contract where it appeared that the arbitration took place in New York at the seller's demand for arbitration of "all claims and controversies of any nature whatsoever connected with or relating to" the contract, that although duly notified of the seller's demand the buyer did not attempt to avert the arbitration and did not appear or participate in the arbitration, and that it was ruled in the New York court proceedings that the buyer's claim for deceit was arbitrable under the contract and that there was no basis for relieving the buyer of his "deliberate default" in the arbitration. [261]

Provisions of a contract for arbitration in New York of all claims or controversies thereunder and that the parties "consent to the jurisdiction of the Supreme Court of . . . New York" conferred jurisdiction on that court to enforce the award made in such an arbitration, so that it was immaterial to its jurisdiction whether or not the party against whom the award was made entered a general appearance in the court proceeding. [261]

Tort. Writ in the Superior Court dated November 9, 1956.

The action was heard by *Lurie, J.,* on a motion by the defendant for judgment on the pleadings.

*Joseph B. Abrams,* (*Robert T. Abrams* with him,) for the plaintiff.

*Kevin Hern & Samuel B. Potter* for the defendant, submitted a brief.

Cutter, J. This is an action, originally in contract or tort but amended into an action of tort for deceit, by a Massachusetts corporation (hereinafter called Shapiro), against a New York corporation (hereinafter called Amerotron), alleged in the writ to have a place of business in Boston. Upon the declaration, the substitute answer, and the replication to the substitute answer, the trial judge allowed a motion by Amerotron for judgment for it on the pleadings. See G. L. c. 235, § 1; *Adiletto* v. *Brockton Cut Sole Corp.* 322 Mass. 110, 112; *Willett* v. *Webster,* 337 Mass. 98, 104–105. Shapiro's bill of exceptions presents the question whether this motion was properly allowed.

Shapiro's declaration alleged that in 1955 it "was induced to enter into contracts for the purchase of . . . cloth by . . . the fraud of . . . [Amerotron,] its agents and servants, . . . consisting in false representations that the quality and color of the goods and the . . . composition of the ingredients . . . matched uniformly the swatches . . . shown to . . . [Shapiro] by" Amerotron's salesman; that Amerotron "knew or should have known (a) that said representations . . . were knowingly false or were made recklessly without actual knowledge . . . although . . . susceptible of knowledge; (b) that they were material; (c) that they were made with the intent that . . . [Shapiro] should rely"; and (d) that Shapiro did rely and sustained damage because the goods shipped did not uniformly conform with the swatches.

Amerotron's substitute answer included not only a general denial, but also the following affirmative allegations. Several contracts for the sale of goods were made between October 21, 1955, and January 25, 1956, both dates inclusive, each of which contained the arbitration clause set out, so far as relevant, in the margin.[1] This action was begun by writ dated November 9, 1956. Amerotron filed a demand, dated November 20, 1956, for arbitration in accordance with the rules of American Arbitration Association. This demand was served on Shapiro, and required "arbitration of . . . all claims and controversies of any nature whatsoever connected with or relating to the said contracts stated above, or any modification thereof, and/or the merchandise shipped or to be shipped thereunder." The demand also requested that "all claims that . . . [Shapiro] has or

---

[1] "10. ARBITRATION: (a) Any controversy or claim arising under *or in relation to* this order or contract, or any modification thereof, shall be settled by arbitration. Such arbitration shall be held in the City of New York, in accordance with the laws of the State of New York, and the rules then obtaining of The National Federation of Textiles, Inc. or the American Arbitration Association, or the Mutual Adjustment Bureau of the Cloth & Garment Trades, Inc., as the party first referring the matter to arbitration shall elect, and the parties *consent to the jurisdiction* of the Supreme Court of the State of New York and further consent that any process or notice of motion or other application to the Court or a Judge thereof may be served outside the State of New York by registered mail or by personal service, provided a reasonable time for appearance is allowed. . . ." (emphasis supplied).

may have against . . . [Amerotron] arising under or relating to the contracts . . . be . . . disallowed in their entirety." In the Superior Court, the proceedings in the present case were stayed. It does not appear that any exception was taken to the stay of proceedings. "Arbitration was held in New York. Though notified, . . . [Shapiro] failed . . . to appear at or to participate in the arbitration hearing. An award was made in favor of Amerotron . . . in the sum of $288,778.44 . . . with interest. . . . On January 21, 1957, Amerotron moved in the Supreme Court of New York for an order confirming the award . . . . Shapiro appeared and opposed the . . . motion" and submitted an affidavit of its president with respect to the contracts which asserted, among other things, (a) that the goods shipped upon testing did not conform to the samples; (b) that "[t]he representations made . . . as to the contents and composition of the goods . . . were wilfully fraudulent, or were made recklessly without actual knowledge . . . although the truth was susceptible of knowledge," and (c) that the present action was pending in Massachusetts. Confirmation of the award was denied by a single judge of the Supreme Court of New York on March 1, 1957, but on May 14, 1957, the Appellate Division (3 App. Div. 2d [N.Y.] 899) reversed the single judge and granted the motion for confirmation of the award, saying, "By all its actions respecting its claim of fraud inducing the contract, including its . . . Massachusetts action, . . . [Shapiro] failed to rescind the contract and elected to recognize the contract and claim damages for the fraud. Such a claim was arbitrable and should have been arbitrated under the contract. There is no basis for relieving . . . [Shapiro] of its deliberate default in the arbitration proceeding, and there is no surviving question as to the existence of the contract." Shapiro appealed and the Court of Appeals (*Matter of Amerotron Corp.* [*Maxwell Shapiro Woolen Co. Inc.*] 4 N. Y. 2d 722) without opinion affirmed the order. On February 3, 1958, judgment for Amerotron was entered in the Supreme Court. Shapiro sought and was denied permission to re-

open the arbitration proceedings, to vacate the award, and to participate in the arbitration. The sums due from Shapiro to Amerotron by reason of the New York judgment have been paid. The substitute answer then pleaded that Shapiro appeared generally in the New York court proceedings, that the New York judgment "constitutes an adjudication of any issue raised in the case at bar," and that the award confirmed by judgment "is conclusive as to the issues raised by the . . . declaration." An accord and satisfaction was also pleaded.

Shapiro, on July 11, 1958, filed a replication admitting the foregoing facts alleged in the substitute answer, except that it denied (a) that Shapiro had entered a general appearance in the New York proceedings and (b) the defences asserting the conclusiveness of the New York arbitration and court proceedings and accord and satisfaction. Shapiro also in its replication made certain assertions with respect to the affirmative allegations of the substitute answer.[1] These are wholly immaterial in the light of the facts clearly established by the pleadings. Shapiro also asserted that "at no time did . . . [Shapiro] waive . . . its right to proceed with its Massachusetts fraud action." The New York Appellate Division has held in effect that the issues raised by the Massachusetts case were arbitrable and should have been submitted to arbitration. If the New York judgment, by a court to whose jurisdiction Shapiro has consented, is binding upon Shapiro with respect to those issues, it is im-

---

[1] Shapiro's principal affirmative assertions were that the Massachusetts stay of this action was discretionary and was subsequently lifted for the purpose of interrogatories and depositions; that certain allegedly erroneous arguments had been made in Massachusetts and in New York; that the award had been excessive by about $70,000 because Amerotron "in a twenty-eight minute ex parte" arbitration hearing had submitted "extra invoices for . . . cloth not shipped"; that Shapiro "had refused to arbitrate the issue of . . . fraud, relying on . . . Massachusetts decisions that a wrongdoer . . . could not escape the consequences of . . . fraud by . . . [a] contract to limit the victim's right of recovery"; that Shapiro could not "rescind . . . because much of the goods had been sold" and Shapiro could not "restore the status quo"; that Shapiro opposed judgment on the award because "under a duty . . . to prevent the extra seventy thousand . . . dollars from being added to what it actually owed . . . and to inform the New York court" of the Massachusetts action; and that after the New York judgment Shapiro "compelled the delivery of" certain goods, not delivered at the time of arbitration, and the giving by Amerotron of certain credits.

material whether Shapiro in the New York proceedings either affirmatively purported to waive its asserted right to proceed in Massachusetts or attempted to preserve it. See *Liberty Mut. Ins. Co.* v. *Hathaway Baking Co.* 306 Mass. 428, 434–435.

The record does not reveal where the contracts for the sale of cloth were made or where they were to be performed. There is, however, no fact established by the record that would suggest (see Restatement: Conflict of Laws, §§ 332, 346, 355, 358) that the law of any State other than Massachusetts or New York (the respective States of incorporation of Shapiro and Amerotron and the only places where there is any indication that they did business) has any application whatsoever to these contracts. The arbitration clause in the contracts provides that any arbitration shall take place in New York "in accordance with the laws of . . . New York." This provision is not to be given a narrow meaning. *Samincorp So. Am. Minerals & Merchandise Corp.* v. *Lewis,* 337 Mass. 298, 301. Indeed, the provision may well be broad enough in terms to constitute a valid and reasonable agreement that the law of New York (the State of incorporation of one of the parties to the contract) is to be the law governing the contracts. *Mittenthal* v. *Mascagni,* 183 Mass. 19, 21–22. *Clark* v. *State St. Trust Co.* 270 Mass. 140, 150.[1] *Dougherty* v. *Equitable Life Assur. Soc.* 266 N. Y. 71, 80–81. *Compania de Inversiones Internacionales* v. *Industrial Mortgage Bank,* 269 N. Y. 22, 26. *Swift & Co.* v. *Bankers Trust Co.* 280 N. Y. 135, 140–141. See *Jewett* v. *Keystone Driller Co.* 282 Mass. 469, 475–476; *Auten* v. *Auten,* 308 N. Y. 155, 159–163; *A. S. Rampell, Inc.* v. *Hyster Co.* 3 N. Y. 2d 369, 381;

---

[1] See the recent legislative recognition of the wisdom of permitting parties to give added certainty to a contract by expressly stipulating reasonably the governing law, G. L. c. 106, § 1–105 (1), as appearing in St. 1957, c. 765, § 1. See also authorities collected in Fine, Massachusetts Contract Cases and Problems in the Choice of Law, 43 Mass. L. Q. (No. 3) 46, esp. at pp. 47–50, 54–59, and fn. 55; Notes, 62 Harv. L. Rev. 647, 72 Harv. L. Rev. 1154, 1164. Cf. *Dolan* v. *Mutual Reserve Fund Life Assn.* 173 Mass. 197, 199–200; *Harwood* v. *Security Mut. Life Ins. Co.* 263 Mass. 341, 348. Cf. also *Brockway* v. *American Exp. Co.* 171 Mass. 158, 161–162; Corbin, Contracts, § 1446 (Supp.).

*Wm. H. Muller Co. Inc.* v. *Swedish Am. Line Ltd.* 224 F. 2d 806, 807–808 (2d Cir.). See also *Bernhardt* v. *Polygraphic Co.* 350 U. S. 198, 202–205. At the very least, the arbitration provision constitutes advance consent by each party to the contracts (a) to arbitration in accordance with the rules of one of the three named arbitration organizations and with the law of New York and (b) to the jurisdiction of the Supreme Court of New York in all matters relating to the contracts. Such a consent is valid and binding under the law of Massachusetts, and is consistent with the public policy of this Commonwealth. See G. L. c. 251, §§ 14, 21 (both inserted by St. 1925, c. 294, § 5); *Spence, Bryson, Inc.* v. *China Prod. Co.* 308 Mass. 81, 82, 88–89; *Samincorp So. Am. Minerals & Merchandise Corp.* v. *Lewis,* 337 Mass. 298, 301–303. Cf. *Sanford* v. *Boston Edison Co.* 316 Mass. 631, 636–637. The law of New York also recognizes such consent as valid and as consistent with its public policy. *Gilbert* v. *Burnstine,* 255 N. Y. 348, 355–357. *Matter of Gantt (Hurtado & Cia. Ltda.)* 297 N. Y. 433. See N. Y. civil practice act, art. 84, §§ 1448–1469; Stern, Conflict of Laws in Commercial Arbitration, 17 Law & Contemp. Prob. 567, 569–575, 578–579; Note, 56 Col. L. Rev. 902.

As the New York Appellate Division pointed out, Shapiro has expressly "elected to recognize the contract[s]" and to attempt to recover damages allegedly suffered because of Amerotron's representations inducing them. See cases like *Morse* v. *Hutchins,* 102 Mass. 439, and *Ceder* v. *McCarthy,* 320 Mass. 618. See also *Roche* v. *Gryzmish,* 277 Mass. 575, 579. Shapiro has not sought to rescind the contracts, so we are not concerned with the effect of rescission upon the arbitration. Shapiro also did not make any effort in the New York courts, in advance of the arbitration, to avoid arbitration on the ground that the matter of its claims in Massachusetts was not within the scope of the arbitration provisions of the contracts. See *Matter of Wrap-Vertiser Corp. (Plotnick)* 3 N. Y. 2d 17, 19–20, decided May 16, 1957, by a closely divided court, only about eight months before its decision in the *Amerotron* case (4 N. Y. 2d 722) and, pre-

sumably, considered in the latter case; *Matter of Application of Manufacturers Chem. Co. Inc. (Caswell, Strauss & Co. Inc.)* 259 App. Div. (N. Y.) 321, 323–324; Kellor, Arbitration in Action, 150–151. See also *Matter of Lipman (Haeuser Shellac Co.)* 289 N. Y. 76, 79. Cf. *Matter of Kramer & Uchitelle, Inc. (Eddington Fabrics Corp.)* 288 N. Y. 467, 471–472.

The *Wrap-Vertiser* case held that a demand to arbitrate the damages "from having been tricked into a bad bargain" (which was to be carried out without rescission) raised "no question 'as to the validity, interpretation or performance of this agreement,'" the only matters submitted to arbitration under the *Wrap-Vertiser* arbitration clause. This clause obviously was considerably narrower than the clause involved in the *Amerotron* case. In the *Wrap-Vertiser* case, also, prior to proceeding to arbitration, the party who sought to avoid arbitration asked for a stay of the arbitration in the New York courts on the ground that whether he was induced to enter into the contract by fraud was not arbitrable. Under the broad arbitration clause in the present case ("any controversy . . . arising under or in relation to this . . . contract"), and since no stay of the arbitration proceedings was sought in advance, the New York courts must have regarded the *Wrap-Vertiser* case as not controlling. There were as noted important differences in the facts and in the procedure which tend to resolve any inconsistency (if there be any) between the *Wrap-Vertiser* case and the decisions of the Appellate Division and the Court of Appeals in the present situation. See discussion in *Matter of General Fuse Co. (Sightmaster Corp.)* 5 App. Div. 2d (N. Y.) 1013; Corbin, Contracts, § 1444 (Supp.).

There is nothing in an agreement to submit matters to arbitration in accordance with the rules of any one of three well known arbitration organizations and the laws of a specified State which constitutes an agreement by Shapiro with Amerotron to relieve the latter from liability for its own fraud. Even if an agreement to submit to a fair arbitration includes an agreement to submit issues of fraud

inducing the contract, such an agreement cannot reasonably be regarded as a contract against a liability which may in fact be found by the arbitrators to exist. Cases like *Granlund* v. *Saraf*, 263 Mass. 76, 80–81, *New England Foundation Co. Inc.* v. *Elliott & Watrous, Inc.* 306 Mass. 177, 182, and *Bates* v. *Southgate*, 308 Mass. 170, 182-183, are distinguishable.

Amerotron's demand for arbitration was as broad as the arbitration provision itself, and both the demand and the provision should be construed as broadly as the parties obviously intended. See *Matter of Lipman (Haeuser Shellac Co.)* 289 N. Y. 76, 79–81; *Matter of Morris White Fashions, Inc. (Susquehanna Mills, Inc.)* 295 N. Y. 450, 456; *Matter of Utility Laundry Service, Inc. (Sklar)* 300 N. Y. 255, 259–260; *Matter of River Brand Rice Mills, Inc. (Latrobe Brewing Co.)* 305 N. Y. 36, 40–41; *Matter of Bohlinger (National Cash Register Co.)* 305 N. Y. 539, 542. See also *Spence, Bryson, Inc.* v. *China Prod. Co.* 308 Mass. 81, 85–86. By seasonable appearance and appropriate action in the arbitration and court proceedings to which it had given binding consent in advance, Shapiro could have raised every issue which it now seeks to raise. Some of these issues, as, for example, whether the goods delivered were in compliance with Amerotron's obligations under the contracts and related representations, would seem necessarily to have been decided against Shapiro by the arbitrators when they included in the award amounts due under the contracts for the goods delivered or available for delivery. See *Matter of Springs Cotton Mills (Buster Boy Suit Co. Inc.)* 275 App. Div. (N. Y.) 196, 198–201, affd. 300 N. Y. 586, 680. The validity of the extra $70,000 of invoices (which Shapiro now contends were fraudulently submitted to the arbitrators) could have been contested before the arbitrators by Shapiro.

Amerotron is not estopped to assert against Shapiro the validity of the New York judgment confirming the arbitrators' award simply because it asserted before a tribunal and courts, agreed to in advance by Shapiro, claims for $70,000 against which Shapiro there had full opportunity to defend.

No conduct by Amerotron is alleged which would constitute any misrepresentation to Shapiro of the scope or nature of the arbitration. Cases like *MacKeen* v. *Kasinskas*, 333 Mass. 695, 698, relied upon by Shapiro are distinguishable. Cf. also *Glus* v. *Brooklyn E. Dist. Terminal*, 359 U. S. 231, 234–235. If Shapiro stayed away from the arbitration (to which it had agreed) or failed to take seasonable steps in the courts (to whose jurisdiction it had consented) to prevent the arbitration, it did so at its own risk.

The scope of the arbitration proceedings in New York has been determined (a) by the opinion of the Appellate Division, affirmed by the Court of Appeals, and (b) by the determination of a single judge of the New York Supreme Court denying Shapiro's motions to reopen the arbitration proceedings, to vacate the award, and for leave to participate in the arbitration proceedings. We must accept the Appellate Division's ruling in its opinion as already quoted above. The judgment on this very situation concludes every issue here presented and every "issue that in fact was or in law might have been litigated" under the demand for arbitration. See *Willett* v. *Webster*, 337 Mass. 98, 102.

We need not determine whether Shapiro in effect entered a general appearance by its various activities before the New York courts. See *Samincorp So. Am. Minerals & Merchandise Corp.* v. *Lewis*, 337 Mass. 298, 301–302; Restatement: Conflict of Laws, §§ 77 (1) (d), 81, 82, comment b. Whether it did so is immaterial. *Mulcahy* v. *Whitehill*, 48 F. Supp. 917, 919–920 (D. Mass.). *Marvlo Fabrics, Inc.* v. *Jarus*, 87 F. Supp. 245, 247 (W. D. Mo.). *Ripley Fabrics Corp.* v. *Hymen*, 91 F. Supp. 1007, 1009 (N. D. Ill.). Its consent contained in the arbitration provision conferred jurisdiction upon the New York courts and Shapiro is bound by its default and by the conclusions of those courts with respect to the award. See N. Y. civil practice act, art. 84, § 1458; *Matter of Abrams (Macy Park Constr. Co. Inc.)* 282 App. Div. (N. Y.) 922, 923.

*Exceptions overruled.*