VENDING CREDIT CORPORATION *v.* TRUDY TOYS COMPANY, INC.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 1-647-9232

Argued January 20—decided February 21, 1969

*Sidney Vogel,* of Norwalk, for the appellant (defendant).

*Kenneth Garfunkel,* of Norwalk, for the appellee (plaintiff).

JACOBS, J. The controlling facts of this case are not in dispute. On May 29, 1963, the plaintiff's assignor, U-Vend, Inc., of Yonkers, New York, entered into a written trial lease agreement with Trudy Toys Company, Inc., of East Norwalk, Connecticut, of "one hot drink machine" for a term of thirty-six months at a rental of $39.50 a month for thirty-six consecutive months, beginning on July 10, 1963. By agreement of the parties the lease was

modified by postponing the date of the first payment from July 10, 1963, to July 30, 1963; otherwise, "the terms of the . . . agreement [shall] remain in effect and are not changed." Delivery of the unit was made on June 5, 1963. On June 14, 1963, U-Vend duly assigned all its rights and remedies under the lease to the plaintiff assignee. The lease contained, inter alia, the following provision: "The lessee is given the right to cancel, nullify and make void the legal effects of this contract providing he has notified the lessor of his intention to do so in the following manner: by mailing a certified letter to the lessor, postmarked not more than five working days except Saturday and Sunday inclusive from delivery of the Hot Drink Machine." The final paragraph of the lease provided: "This agreement shall be deemed to have been made in the State of New York, regardless of the order in which the signature of the parties shall be fixed hereto, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of New York."

In accordance with the terms of the lease, Trudy Toys prepaid the rental ($79) to extinguish the last two monthly payments. On June 14, 1963, Trudy Toys gave notice by registered mail, postmarked June 17, 1963, at South Norwalk of its intention to exercise its rights by terminating and canceling the lease. Despite the notice of termination, the court found that the machine remained in the defendant's possession and was used by it. After the notice of termination, Trudy Toys made monthly payments for nine consecutive months. These payments were made by check, and with each check was enclosed a coupon taken from a monthly payment booklet.

On May 14, 1964, Trudy Toys notified the plaintiff by letter that "[w]e are discontinuing our lease because we are in the process of vacating our build-

ing in June [1964] and we are not interested in continuing the lease for this machine." With this letter, Trudy Toys returned the monthly payment booklet. Sometime in August, 1964, Trudy Toys moved to its new location, but left the machine behind. It was ultimately reclaimed by U-Vend after notice that the machine had been abandoned.

Upon the foregoing facts, about which there was no dispute, the court concluded that (1) the registered letter of June 14, 1963, postmarked June 17, 1963, was ineffective to operate as a termination of the lease because it was not made within the time fixed by the terms of the lease; (2) the attempted termination was nullified by the defendant's subsequent conduct in using the machine and by making the monthly payments called for by the lease; and (3) the lease is operative in Connecticut and is therefore governed by Connecticut law. Accordingly, judgment was rendered for the plaintiff to recover of the defendant damages for $987.50, representing twenty-five monthly payments at $39.50 each, and attorney's fees of $197.50.

The assignment of errors raises two basic issues: (1) whether termination was effectively made under the lease; and (2) whether New York law is applicable in view of the expressly stated provision that the contract shall be interpreted in accordance with the laws of the state of New York.

## I

The type of transaction involved here is frequently called "leasing for hire" and takes the form of a bailment lease. It arises in connection with the use of equipment where the bailee is either unwilling or unable to purchase it. See 9 Williston, Contracts (3d Ed.) § 1041A. The lease in question expressly provided that Trudy Toys shall have the power of

termination, to be exercised by giving notice. The agreement itself expressly stated just how this notice was to be given and when it became operative. "When the optionee decides to exercise his option he must act unconditionally and precisely according to the terms of the option." 1 id. § 61D, p. 206; see *United States* v. *T. W. Corder, Inc.,* 208 F.2d 411, 413; 1A Corbin, Contracts § 264.

The defendant recognizes that the reserved power of termination depends on the terms of the option created by agreement of the parties; however, it is insisted that literal compliance ought to give way to the rule of reasonableness. The defendant's brief puts the issue in this way: "The question requires a determination of whether under all the circumstances the reserved option to terminate . . . must be exercised at the exact time specified in the contract or whether a rule of reasonableness obtains." We cannot agree that the rule of reasonableness applies here.[1]

"Options to terminate leases are by no means uncommon." Note, 164 A.L.R. 1014. "In option contracts time is nearly always of the essence." Corbin, "Option Contracts," 23 Yale L.J. 641, 662. "An option [to terminate] expires if not exercised within the time limited; 'time is of the essence.'" *Cities Service Oil Co.* v. *National Shawmut Bank,* 342 Mass. 108, 110; see *Fidelity & Columbia Trust Co.* v. *Levin,* 128 Misc. 838, 843 (N.Y.); *Doepfner* v. *Bowers,* 55 Misc. 561, 566 (N.Y.); 3 Williston, Con-

---

[1] It was undisputed that delivery of the "hot machine" was made on June 5, 1963. The defendant says that "[i]t would have been difficult, if not impossible, before June 17 [1963] to certify the mail." But June 5 fell on a Wednesday. Thus, excluding Saturday (June 8) and Sunday (June 9), the defendant could have sent a notice by certified mail on any working day from June 6 through June 12, 1963. As we interpret the provision of the lease quoted above, this is exactly what the parties had in mind.

tracts (Rev. Ed.) § 853. The rule is that "where as here the parties have agreed to a termination clause, the clause has been enforced as written." *A. S. Rampell, Inc.* v. *Hyster Co.,* 3 N.Y.2d 369, 382. "Clearly enough one who has agreed to give notification within a fixed time may not complain that the period was unreasonably short. The minds of the parties were or should have been specifically directed to that problem of the adequacy of the allotted time." 2 Merrill, Notice § 831. "Time is of the essence of options both at law and in equity." 2 Page, Contracts § 2112 (Sup.); Restatement, 1 Contracts § 276 (b). Such is also the Connecticut rule. See *Xanthakey* v. *Hayes,* 107 Conn. 459, 473; *Roberts* v. *Norton,* 66 Conn. 1, 7. Literal compliance is not inequitable where as here the lease itself provided a specific time limitation with sufficient definiteness.

There are practical reasons as well why the parties should be held to their bargain. The lessor made an investment of its resources and credit in the "lending for hire" business. Equipment and services are costly. The lessor could not reasonably be expected to recoup its expenditures, recover its investment or realize a profit if the lessee fails to exercise the power of termination within the time expressly limited by the contract.

Lastly, " '[c]ourts of law must allow parties to make their own contracts, and can enforce only such as they actually make. Whether the contract is wise or unwise, reasonable or unreasonable, is ordinarily an immaterial inquiry. The simple inquiry is, what is the contract? and has the plaintiff performed his part of it?' *Zaleski* v. *Clark,* 44 Conn. 218, 223." *Continental Copper & Steel Industries, Inc.* v. *Bloom,* 139 Conn. 700, 704. It is beyond the province of courts to substitute terms for those made by the

parties to a contract, or to supply terms that have not been agreed upon. " '[T]he courts do not make a contract for the parties' "; 3 Corbin, Contracts § 541, p. 94; or "rewrite their contract." *In re Estate of Cohen,* 23 Ill. App. 2d 411, 420.

The court was correct in concluding that Trudy Toys failed to exercise its reserved power of termination within the time expressly fixed by the terms of the contract.

## II

The defendant next contends that the court erred in failing to give effect to an expressly stated provision that the lease shall be interpreted in accordance with the laws of the state of New York.

Undoubtedly, parties to a contract may expressly select the choice of law by which it is to be governed. See *Pollak* v. *Danbury Mfg. Co.,* 103 Conn. 553, 557; *Parks* v. *Baldwin Piano & Organ Co.,* 262 F. Sup. 515, 518 n.4; 16 Am. Jur. 2d, Conflict of Laws, § 46. Where the bargaining powers have specified a choice of law, "[s]ound policy requires some limitations on such a power." 6A Corbin, Contracts § 1446, p. 485. We are now authorized by statute (see General Statutes §§ 51-32, 52-163, 52-164) to take judicial notice of the law of sister states. This does not mean that we are required to undertake an original examination of the foreign law. Such an undertaking would throw formidable burdens on the courts. It is incumbent on the party relying on foreign law to make available to the court authoritative sources, subject to inspection and verification by opposing counsel, under the usual rules of judicial notice. See *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 475; cf. *Tuttle* v. *Jockmus,* 106 Conn. 683, 688. In support of New York law, the defendant has relied entirely on a

single paragraph culled out of an annotation in 144 A.L.R. 1024, 1027, and cases there cited. Thus, although the parties formulated a choice of law, the record contains an insufficient showing as to what New York law is with respect to damages recoverable for breach of a "bailment for hire" lease, that is to say, New York law has not been established to our satisfaction.[2] In these circumstances, we are justified in assuming that New York law is the same as ours. See *Adamsen* v. *Adamsen,* 151 Conn. 172, 178; *Stenz* v. *Sandstrom,* 143 Conn. 72, 76; *Ehrenzweig,* Conflict of Laws § 119, p. 341 (1962); Dicey & Morris, Conflict of Laws (8th Ed.) p. 1110.

The complaint in this case describes a cause of action to sustain a judgment for substantial damages. It alleged a violation of the terms of the lease, which was made part of the complaint. "The general intention of the law giving damages in an action for the breach of a contract like the one here in question, is to put the injured party, so far as it can be done by money, in the same position that he would have been in if the contract had been performed." *Jordan, Marsh & Co.* v. *Patterson,* 67 Conn. 473, 480; McCormick, Damages § 137, p. 561. The answer does not set up by way of special

---

[2] The cases which the defendant relied on in support of New York law are the following: *Zule* v. *Zule,* 24 Wend. 76; *Chamberlain* v. *Pratt,* 33 N.Y. 47; *Chase* v. *Second Ave. R. Co.,* 97 N.Y. 384; *Fox Construction Co.* v. *Logan Construction Co.,* 170 N.Y.S. 50; *Hood Farm, Inc.* v. *Roberts,* 254 App. Div. 383. These cases seem to hold that a tenant holding over under a lease of real estate does so under the same terms as to rent reserved as in the original lease. This rule does not apply to a lease of personal property after the expiration of the term of the lease because of the essential difference between a lease of real estate and a lease of personal property. In other words, the cases hold that the holdover doctrine has no applicability to a bailment for hire. In the instant case, as the lease had not yet expired, there could be no holdover; hence, we fail to see the applicability of the New York cases cited above to the case at bar.

defense or otherwise that any damages which the plaintiff by reasonable diligence might have avoided are not to be regarded as the proximate results of the defendant's acts. See *Bernhard* v. *Curtis,* 75 Conn. 476, 483. We must take the record as we find it; therefore, we must assume "that the damages recoverable in this case are the same as in ordinary cases of breaches of contract." *Cohn* v. *Norton,* 57 Conn. 480, 494. The letter of May 14, 1964, in which Trudy Toys stated that "we are discontinuing our lease . . . we are not interested in continuing the lease for this machine," must be taken to mean a repudiation of the contract. "The breach thereupon became a total one justifying an immediate action by the plaintiff to recover the damages which would naturally flow from such a breach." *Sagamore Corporation* v. *Willcutt,* 120 Conn. 315, 320.

There is no error.

In this opinion KOSICKI and DICENZO, Js., concurred.