87 F.3d 604
 VALLEY JUICE LTD., INC., Plaintiff-Appellant,
v.
EVIAN WATERS OF FRANCE, INC., Defendant-Appellee.
EVIAN WATERS OF FRANCE, INC., Plaintiff-Appellee-Cross-Appellant,
v.
VALLEY JUICE LTD., INC., Defendant-Appellant-Cross-Appellee.
 Nos. 954, 1246 and 1247, Dockets 94-7813, 94-7817 and 95-7709.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 24, 1996.
Decided June 11, 1996.
 
 Carroll E. Ayers, Wakefield, MA, for Plaintiff-Appellant-Cross-Appellee Valley Juice Limited, Inc.
 W. Michael Garner, New York City (Peter J. Schankowitz, Schnader Harrison Segal & Lewis, New York City, of Counsel), for Defendant-Appellee-Cross-Appellant Evian Waters of France, Inc.
 Before: JACOBS, LEVAL, and PARKER, Circuit Judges.
 LEVAL, Circuit Judge:
 
 
 1
 This dispute involves contract and other claims arising out of a business relationship between Valley Juice Limited, Inc. ("Valley") and Evian Waters of France, Inc. ("Evian"). The case was heard before a jury in the United States District Court for the District of Connecticut. Both parties appeal.
 
 Background
 
 2
 Valley is a New England beverage distributor based in Boston, Massachusetts. Evian, a New York corporation with its principal place of business in Greenwich, Connecticut, imports and sells natural spring water. In late 1985, Valley began selling Evian's water in New England, purchasing the product from Evian's then-distributor. In 1987, Evian and Valley discussed Valley's becoming Evian's master distributor for New England. Valley claims that, at the urging of Evian, it made substantial investments to prepare itself for that task. In January 1988, Valley entered into a written distributorship agreement with Evian (the "Agreement"), pursuant to which Valley became (with certain specified exceptions) the exclusive New England distributor of Evian's water.
 
 
 3
 According to Valley's allegations, Evian violated its rights in numerous ways: In the summer of 1988, Valley claims it discovered that Evian sold to other distributors in Vermont and New Hampshire in violation of Valley's exclusivity agreement. Later that summer, Evian removed those two states from Valley's distribution area, in violation of the Agreement. In June 1989, Evian told Valley that other substantial business areas were being eliminated from its contractually assigned distribution territory. In December 1989, Evian pressured Valley to purchase a large quantity of water at the low-point of the selling season in order to ensure the continuation of the Agreement. But shortly thereafter, on January 29, 1990, Evian gave Valley written notice that the Agreement had expired, and that it would cease shipping water to Valley in thirty days. Valley thereafter stopped payment on Evian's most recent invoice.
 
 
 4
 In June 1990, Valley filed suit against Evian in Massachusetts State court (the "Valley action"), raising breach of contract and other claims. Evian responded by filing its own suit in Connecticut State court against Valley (the "Evian action"), alleging principally that Valley had failed to pay for purchased water. Both suits were removed to federal court by reason of diversity of citizenship. See 28 U.S.C. § 1441(b). Subsequently, the Valley action was transferred from the Massachusetts district court to the Connecticut district court pursuant to 28 U.S.C. § 1404, and the two cases were consolidated.
 
 
 5
 Valley's complaint presented four causes of action that are of relevance to this appeal. It alleged: (1) breach of contract; (2) unjust enrichment, or quantum meruit; (3) tortious interference with contract; and (4) violation of the Massachusetts Unfair Trade Practices Act ("MUTPA"), Mass.Gen.L. ch. 93A, § 1 et seq.
 
 
 6
 Evian's complaint alleged principally that it had delivered $367,907.03 worth of product to Valley, for which Valley had not paid. Evian's complaint makes essentially the same claim under two separate theories. Count I pleads goods sold and delivered; Count II pleads account stated.[1] In addition, Evian sought declaratory relief that the distribution agreement had lawfully terminated (by expiration) as of January 31, 1989.[2]
 
 
 7
 The case was tried to a jury in the Connecticut district court. After the close of evidence, the district court granted Evian's motion for a directed verdict on all four of Valley's claims. The court also ruled for Evian on its claim for declaratory judgment as a matter of law. The only issues submitted to the jury were Evian's claims for goods sold and account stated. The jury found against Evian on its claim for account stated, but in its favor on its claim for goods sold. The jury awarded damages of $185,676.85, approximately one half what Evian had sought. The district court denied Evian's subsequent motion for judgment as a matter of law on these counts, in which it sought full payment, and granted Evian's motion for prejudgment interest.
 
 
 8
 Valley appeals from: (1) the district court's directed verdict in favor of Evian on Valley's four causes of action; (2) the grant of declaratory relief to Evian as to the lawful termination of the Agreement; and (3) the award of prejudgment interest to Evian. Evian cross-appeals from the district court's denial of judgment as a matter of law for the full amount sought as goods sold and account stated.
 
 Discussion
 I. Choice of Law
 
 9
 As a predicate to resolving any of the claims at issue in this appeal, we must determine what state's law applies to the case, which we hear in our diversity jurisdiction. 28 U.S.C. § 1332. The parties dispute the issue. Evian argues that, pursuant to the Agreement's choice of law clause, New York law applies. Valley argues principally that Massachusetts law applies, at least to the suit it initiated. The district court followed New York law with respect to both actions. On all issues save one,[3] we agree that New York law applies to the contract claims.
 
 
 10
 Because this was the consolidated trial of two suits, one filed in the Massachusetts state court and one in the Connecticut state court, the choice of law issue is unusually complex. As a general matter in diversity cases, we follow the substantive law of the state in which the district court sits, including its choice of law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). However, where--as here with respect to the Valley action--a case is transferred from one federal jurisdiction to another at the behest of the defendant pursuant to 28 U.S.C. § 1404, "a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed." Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir.1993); see Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964). We therefore apply Massachusetts choice of law rules to the Valley action, and Connecticut choice of law rules to the Evian action.
 
 
 11
 Our analysis is structured by the Agreement itself, which, as noted, specifies that it "is to be governed by the laws of the State of New York." This contractual choice is not determinative. We must first determine whether, under applicable state choice of law principles, that provision would be honored. We conclude that under the choice of law regimes of either Massachusetts or Connecticut, the parties' contractual choice of law would be respected, and that New York law therefore generally applies to this dispute.
 
 
 12
 As for the Valley action, we think it plain that Massachusetts choice of law rules would honor the parties' contractual choice of New York law. In Morris v. Watsco, Inc., 433 N.E.2d 886, 385 Mass. 672 (1982), the Supreme Judicial Court of Massachusetts made clear that it "acknowledge[s] and give[s] effect to the law reasonably chosen by the parties to govern their rights under contracts." Id. at 888. More recently, the State's highest court explained that it will apply the law of the state specified by the parties in a choice of law clause "in the absence of any substantial Massachusetts public policy reason to the contrary...." Jacobson v. Mailboxes Etc. U.S.A., Inc., 646 N.E.2d 741, 744, 419 Mass. 572, 575 (1995) (citing Watsco, 433 N.E.2d at 888, and Restatement (Second) of Conflict of Laws § 187 (1971 & rev. 1989) [hereinafter Restatement (Second) Conflict ]. See also Lambert v. Kysar, 983 F.2d 1110, 1118 (1st Cir.1993) (noting that Massachusetts "courts routinely enforce choice-of-law provisions unless the law chosen violates established public policy or bears no reasonable relationship to the contractual transaction").
 
 
 13
 We see no "Massachusetts public policy reason" not to enforce the parties' choice of law. Quite to the contrary, Massachusetts has a strong interest in enforcing such contractual provisions, which increase the capacity of parties to know ahead of time how a court might interpret the terms of their contract, thereby diminishing the need for costly litigation should a disagreement arise later. See Restatement (Second) Conflict § 187 cmt. e ("Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract.").
 
 
 14
 And there is nothing unreasonable about the parties' choice of New York law. Valley argues that the choice of New York law is unreasonable because New York has no connection with the contract: The Agreement was not negotiated there, no business was conducted in New York, and neither company is based there. We disagree.
 
 
 15
 Even if Massachusetts required a showing of contacts, New York has more than sufficient connection with the contract because Evian is incorporated in New York. Valley cites to no Massachusetts authority suggesting that a contract provision which chooses the law of one party's state of incorporation is unreasonable.[4] Furthermore, the Restatement, upon which Massachusetts courts have expressly relied in resolving conflicts questions, see, e.g., Jacobson, 646 N.E.2d at 744 (citing Restatement ), makes clear that the incorporation of one party in the state whose law is chosen under the contract is sufficient to satisfy any applicable contacts requirement. See Restatement (Second) Conflict § 187 cmt. f (substantial relationship test met "where one of the parties is domiciled" in the chosen state); Black's Law Dictionary (6th ed. 1996) (defining "corporate domicile" as "the state of ... incorporation"); see also Nedlloyd Lines B.V. v. Superior Court of San Mateo County (Seawinds Ltd.), 3 Cal.4th 459, 467, 11 Cal.Rptr.2d 330, 338, 834 P.2d 1148, 1153 (1992) (in bank) (following Restatement ).
 
 
 16
 We are not certain that Massachusetts would require a showing of contacts here in any event. At least where "the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue," the Restatement has no contacts requirement for the enforcement of a choice of law provision. Restatement (Second) Conflict § 187(1).
 
 
 17
 Even where the question at issue is not one that could have been resolved by advance contractual agreement, the Restatement allows the enforcement of choice of law provisions absent a contrary "fundamental policy" in the state whose law would otherwise govern, so long as there is either some "other reasonable basis for the parties' choice" or a "substantial relationship" between the chosen state and the "parties or the transaction." Id. § 187(2)(a). Both of these alternative requirements were met. There is a "substantial relationship" because one of the parties to the contract is incorporated in the chosen state. See id. § 187 cmt. f. Some "other reasonable basis for the parties' choice" is satisfied by numerous considerations: The contract at issue is Evian's general distribution agreement, which was drafted for use throughout the United States. By choosing New York's highly developed body of commercial law to govern the Agreement, Evian ensured uniformity in the interpretation of the contract, and decreased the legal costs associated with making individual arrangements with its distributors. These benefits inure to Evian and its distributors alike. Such a choice of law is eminently reasonable. Cf. id.
 
 
 18
 We therefore conclude that Massachusetts, which has expressly relied on the Restatement in similar matters, would honor the parties' choice of New York law.
 
 
 19
 The same logic applies to the Evian claim under Connecticut choice of law principles. "Contract clauses which require the application of the laws of other states upon breach or dispute are recognized as proper in Connecticut." Syncsort v. Indata Servs., 541 A.2d 543, 545, 14 Conn.App. 481 (1988); see also Pollak v. Danbury Mfg. Co., 131 A. 426, 428, 103 Conn. 553 (1925); Fairfield Lease Corp. v. Pratt, 278 A.2d 154, 155, 6 Conn.Cir.Ct. 537 (1971); Vending Credit Corp. v. Trudy Toys Co., 260 A.2d 135, 138, 5 Conn.Cir.Ct. 629 (1969). In applying contractual choice of law provisions, Connecticut courts routinely refer to the Restatement for guidance. See, e.g., PaineWebber Jackson & Curtis, Inc. v. Winters, 579 A.2d 545, 550 & n. 3, 22 Conn.App. 640, 650 & n. 3 (1990); Levine v. Advest, Inc., 1996 WL 57084, at * 4 (Conn.Super.Jan.11, 1996). Because, as explained above, the Restatement calls for the application of New York law here, we are confident that the Connecticut courts would abide by the parties' contractual choice.
 
 II. Valley Action
 A. Breach of Contract
 
 20
 Valley alleges that Evian breached the Agreement by selling water to other New England distributors during the period in which Valley was to have had exclusive rights in the area, and by shipping defective product. The district court directed a verdict against Valley on the breach of contract claim on the grounds that the claim was barred under Paragraph 19 of the distribution agreement by reason of Valley's failure to give notice in a timely fashion. Paragraph 19 states:
 
 
 21
 NOTICE OF CLAIMS AND ADJUSTMENTS AFTER TERMINATION OF AGREEMENT: If during the term of this Agreement Distributor shall have reason to believe it has any claim against Company in respect of any transaction growing out of this Agreement, it shall in writing notify Company within thirty (30) days after Distributor knows or has reason to know the basis of any such claim. Failure to give such notice shall relieve Company from any and all liability on any claim in respect of any transaction growing out of this Agreement, notice and full details of which are not given to Company in writing within thirty (30) days after such termination.
 
 
 22
 The trial court read this paragraph to mean that Valley waived any breach of contract claim under the Agreement unless it gave written notice of the claim within thirty days. Valley never gave written notice prior to filing its complaint. The district court therefore concluded that Valley had waived the breach of contract claim.
 
 
 23
 Valley argues on appeal that this reading misinterprets the contract. We agree. The heading of p 19 specifies that its provisions apply to "NOTICE OF CLAIMS AND ADJUSTMENTS AFTER TERMINATION OF [THE] AGREEMENT." The word "termination" is, in the context of this contract, a term of art. Paragraph 3, headed "TERMINATION OF AGREEMENT," specifies that "prior to the expiration of [the] Agreement," Evian may "terminate this Agreement and the Distributor's rights hereunder" under certain conditions. (emphasis added). Hence, "termination" of the Agreement--the contingency to which p 19 speaks--is something distinct from "expiration." In a p 3 termination, Evian ends the Agreement before the completion of the renewable one year term specified in p 2. Evian never sought to terminate the Agreement under p 3. Quite to the contrary, Evian insists in its separate action that the Agreement lapsed on its own terms (in other words, that it "expired"), when the one-year term and the one-year renewal period ended. Valley thus has a strong argument that the provisions of p 19 are inapplicable here, since that portion of the Agreement only requires Valley to provide "Notice of Claims ... After Termination " of the Agreement, and the Agreement was never terminated. (emphasis altered).
 
 
 24
 The language of p 19 provides still further support for this conclusion. Evian calls our attention to the first sentence of the paragraph, which requires that Valley give notice of any claim it intends to pursue under the contract within thirty days of the time at which it "knows or has reason to know the basis" of the claim. However, that sentence is followed by another, which sets forth the penalties for failure to give timely notice of claims. This sentence plainly states that a "[f]ailure to give such notice ... relieve[s] [Evian] from any and all liability on any claim ..., notice and full details of which are not given to [Evian] in writing within days after such termination." (emphasis added). This sentence seems to provide that Evian's exoneration by reason of failure to give notice occurs only in cases of termination, and only where Valley fails to give notice within 30 days of the termination. Paragraph 19 does not address the possibility of claims--like those at issue here--brought after expiration of the Agreement. As there was no "termination," the failure to give notice is without effect under the contract.[5]
 
 
 25
 We therefore vacate the district court's directed verdict against Valley on its breach of contract claim, and remand for further proceedings.[6]
 
 B. Quantum Meruit
 
 26
 Valley also claimed in quantum meruit, arguing that Evian was unjustly enriched because Valley provided Evian's sole warehouse without compensation during a crucial early stage in the marketing of its product; gave Evian a marketing plan that allowed its product to become successful; and purchased large quantities of water in December 1989 at the low point of the season on the understanding that the contract would be renewed through 1990. The district court granted a directed verdict against Valley on this claim, finding that the existence of a valid contract covering the subject matter of the dispute barred the assertion of such a claim. We agree.
 
 
 27
 Under New York law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656 (1987). That principle applies here. Valley's alleged decisions to provide a warehouse for use with Evian products and to give Evian a marketing plan were pre-contractual expenditures made in an effort to secure the bargain. By signing the distribution agreement, Valley agreed that the benefits accruing to it under that contract were sufficient compensation for these expenditures. Paragraph 23 of the Agreement specifies that "[t]his Agreement constitutes the entire Agreement between the Company and Distributor. There are no oral agreements or other agreements or understandings between the Company and the Distributor affecting this Agreement. This Agreement supersedes any and all previous agreements and/or understandings between the parties." Valley cannot now bring a suit seeking quasi-contractual recovery "for events arising out of the same subject matter," id., as the underlying contract.
 
 
 28
 Valley's argument that it has stated a quantum meruit claim for its December 1989 purchase of Evian water is also unavailing. Valley alleges only that the purchase was made "with the understanding that the contract was renewed through 1990...." As explained in greater detail below,[7] this was an incorrect assumption. That Valley may have wrongly thought its contract had been renewed at the time it made the December 1989 purchase does not mean that it can sustain a claim for unjust enrichment. Valley purchased water under the Agreement, and received the goods at the contractually specified price. The purchase fell within the scope of its "valid written agreement." Clark-Fitzpatrick, 516 N.E.2d at 193, 521 N.Y.S.2d at 656. We therefore affirm the district court's grant of directed verdict in favor of Evian on Valley's claim for quantum meruit.
 
 C. Tortious Interference with Contract
 
 29
 Valley argues in the third count of its complaint, that Evian tortiously interfered with advantageous business relationships between Valley and those to whom it had supplied Evian products, by stripping away Valley's territory under the Agreement, selling directly to some of Valley's former customers, and giving the rest of the business to other distributors.
 
 
 30
 We note as an initial matter that the choice of law clause, which states only that the "Agreement is to be governed by the laws of ... New York," does not purport to govern a claim in tort. For reasons already explained, we would therefore ordinarily undertake to apply Massachusetts choice of law principles to determine the applicable substantive law. But we need not consider the matter further. The district court addressed this claim assuming that Massachusetts law applied; Valley and Evian do not directly dispute the district court's application of Massachusetts law, and cite only Massachusetts authority on this issue in their briefs.
 
 
 31
 In order to prevail on this claim, Valley must demonstrate: "(1) a business relationship ... of economic benefit; (2) the defendant's knowledge of such relationship ...; (3) the defendant's intentional and [improper][8] interference with it; [and] (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct." ELM Medical Lab., Inc. v. RKO Gen., Inc., 532 N.E.2d 675, 681, 403 Mass. 779, 787 (1989) (quoting Comey v. Hill, 438 N.E.2d 811, 387 Mass. 11, 19 (1982)). With respect to the showing of "improper[ness]" required under the third prong, Valley must demonstrate "the interference [was] improper in motive or means." Dulgarian, 652 N.E.2d at 609.[9]
 
 
 32
 The district court directed a verdict in favor of Evian on this claim, ruling that Valley had failed to put forward evidence sufficient to support its argument that Evian had acted with either improper motive, or improper means. Valley argues that this determination was in error.
 
 
 33
 Valley claims principally that because Evian allegedly breached its distribution agreement with Valley in order to interfere with Valley's business relationships with its suppliers, Evian used an improper means to facilitate the interference.[10] Cf. WFB Telecommunications, Inc. v. NYNEX Corp., 188 A.D.2d 257, 258, 590 N.Y.S.2d 460, 462 (1st Dep't 1992) (holding that refusal of regular purchaser to do business with independent manufacturer's representative resulting in representative's loss of contracts with manufacturers did not tortiously interfere with these contracts since purchaser's decision was not improper, while noting "no showing of ... the existence of a contract ... between" purchaser and representative). Because the trial judge found no breach of the Agreement, he never reached the question whether such a breach could make the alleged interference improper. As we have remanded the question of breach of the distribution agreement, we leave this matter to the district court on remand, expressing no view as to the validity of Valley's theory.
 
 D. Massachusetts Unfair Trade Practices Act
 
 34
 Valley also brings a claim under MUTPA. See Mass.Gen.L. ch. 93A, § 1 et seq. The district court directed a verdict against Valley on this claim, following the authority of Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607 (1st Cir.1993), and Worldwide Commodities, Inc. v. J. Amicone Co., 630 N.E.2d 615, 36 Mass.App.Ct. 304 (1994). In Northeast Data, the court reasoned that, with respect to MUTPA claims that are in essence reframed contract claims, a contractual choice of law clause specifying that the "rights and obligations of the parties ... shall be governed by and construed in accordance with the laws of California," would apply to MUTPA claims as well as ordinary contract claims. Northeast Data, 986 F.2d at 609. Since California had no statute that paralleled MUTPA, the Northeast Data court affirmed dismissal of the claims. Id. at 611. The district court ruled that this was a parallel case, and directed verdict against Valley--finding that since "the valid written agreement provides that New York law shall apply, a claim based on Massachusetts law is barred...."
 
 
 35
 A decision of the Supreme Judicial Court of Massachusetts that was announced subsequent to the district court's ruling on the MUTPA claim, however, distinguished Northeast Data, and requires a different result in our case. In Jacobson v. Mailboxes Etc. U.S.A., Inc., 646 N.E.2d 741, 746 n. 9, 419 Mass. 572, 580 n. 9 (1995), the Supreme Judicial Court ruled that an agreement which "does not state that the rights of the parties are to be governed by [non-Massachusetts] law but only that the agreement is to be governed and construed by [non-Massachusetts] law .... does not purport to bar the application of [MUTPA] to the parties' dealings in Massachusetts." Unlike the choice of law clause in Northeast Data, which referred to the parties' "rights and obligations" under the contract, the contract at issue here--like that in Jacobson--states only that the "Agreement is to be governed by the laws of the State of New York." As explained earlier, we are bound in our consideration of the Valley action by Massachusetts choice of law principles. Massachusetts would not interpret the choice of law clause in the Agreement to bar Valley's MUTPA claim by requiring that it proceed under New York law. See id. We therefore remand the MUTPA claim for further consideration by the district court.
 
 III. Evian Action
 A. Lawful Termination
 
 36
 Evian's complaint sought declaratory relief as to the lawful termination of the distribution agreement. The district court ruled on this claim as a matter of law, and found that the Agreement had expired "of its own terms no later than January 31, 1990[11] and that the relationship between the plaintiff as supplier and the defendant as distributor was lawfully terminated." Valley contests this ruling.
 
 
 37
 We agree with the district court's disposition. Paragraph 2 of the Agreement clearly specifies that it is valid "for a period of one (1) year," and further provides that
 
 
 38
 [a]t the end of the initial term of one (1) year ..., the Distributor [Valley] shall have the right to exercise an option to renew this Agreement for an additional period of one (1) year, provided the distributor has [met a quota] ..., except in the event this Agreement is terminated by the Company....
 
 
 39
 Evian and Valley entered into the Agreement in January 1988. By its own terms, even with the single renewal provided for in the contract, the Agreement could have lasted no longer than January 1990.[12]
 
 
 40
 Valley claims that the Agreement was renewed beyond its specified terms, because of a claimed understanding that the relationship would continue so long as Valley met its yearly quotas, and because Evian employees gave Valley a 1990 quota in exchange for the December 1989 water purchase. We are unpersuaded. The contract plainly states: "This Agreement and the terms hereof may be changed only by [a] writing signed by both the Company and the Distributor. This Agreement ... may not be changed orally." The Agreement is clear that only one renewal was allowed, and that the maximum term of the arrangement was two years. A further renewal would have constituted a modification of the Agreement's terms, and no modification was ever made in the manner specified by the contract.
 
 
 41
 B. Evian's Motion for Judgment as a Matter of Law
 
 
 42
 In Counts I and II of Evian's complaint, it alleged, on goods sold and account stated theories, that Valley owed $367,907.03 for product that was delivered, but for which Valley never paid. To prove Count I, Evian showed that it delivered the water in question to Valley, that Valley accepted delivery, and that Valley failed to pay Evian's invoices. To prove Count II, Evian showed that it had stated an account for the specified sum, and that Valley had not objected within a reasonable time, or paid. The jury ruled in Evian's favor on Count I, but awarded damages of only $186,676.85--slightly more than half of Evian's invoices. The verdict was against Evian on Count II. Evian then moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), arguing that it was entitled to the whole sum claimed. The district court denied the motion.
 
 
 43
 We review the denial of Evian's motion for judgment as a matter of law de novo. Song v. Ives Labs. Inc., 957 F.2d 1041, 1046 (2d Cir.1992). We will grant judgment as a matter of law only where there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... there is such an overwhelming amount of evidence in favor of the movant that [a] reasonable and fair minded [jury] could not arrive at a verdict against him." Mattivi v. South African Marine Corp., 618 F.2d 163, 168 (2d Cir.1980). In making this assessment, we view the evidence in the light most favorable to Valley, and give it the benefit of all reasonable inferences the jury might have drawn in its favor. Smith v. Lightning Bolt Productions, Inc., 861 F.2d 363, 367 (2d Cir.1988).
 
 
 44
 The district court ruled without explanation that "the evidence was such that the jury could reasonably [have] arriv[ed] at the verdict it did." Giving Valley every benefit of the doubt, we nevertheless disagree. As to Evian's first count, the jury found in its special verdict that Evian had proved Valley's acceptance of the goods at issue. This finding is not contested by Valley. The jury, however, answered, "No," to the question whether Evian was entitled to recover the full $367,907.03 and, as noted, went on to award a considerably smaller amount. The only matter at issue here is whether Evian was entitled as a matter of law to the full amount.
 
 
 45
 Valley's argument on appeal in support of the jury verdict on Count I is uncompelling. Valley argues that the invoices presented by Evian at trial were copies, presumably calling into question their reliability, and that Evian's account statements for Valley fluctuated, initially showing that Valley owed more than the money ultimately claimed by Evian, suggesting that Evian's record keeping was too poor to be reliable. Neither point could have persuaded a reasonable jury. The fluctuation in Valley's account statement is entirely consistent with Evian's invoices, simply reflecting the posting of various credits and debits--none of which Valley specifically challenges. Nor was there evidence that Evian had forged or altered the invoices. Indeed, Valley's own books confirmed the amount of Evian's billing. In short, Valley points to no evidence that contradicts or calls into question Evian's entitlement to full payment. We conclude that Evian was entitled as a matter of law to the full amount of its invoices for these shipments of water to Valley.
 
 
 46
 As to Count II, the claim based on Evian's account stated, the district court instructed the jury that if it found Evian had sent a statement of account to Valley, and Valley did not object within a reasonable time, it must award Evian damages in the full amount requested. Valley raises no objection to the charge. It did not contest receiving account statements, nor proffer evidence that it ever objected to the statements. Indeed, Valley's own internal accounting records reflected a debt due to Evian of $367,907.03. Nor does Valley point to evidence that would justify any reduction in payment as a setoff.[13] Under the circumstances, there was no valid basis for the jury's rejection of Evian's claim for the stated account.
 
 
 47
 We therefore reverse the district court's ruling, and direct entry of judgment for Evian in the full amount of its invoices under the alternative theories set forth in Counts I and II.
 
 C. Prejudgment Interest
 
 48
 The district court granted Evian prejudgment interest pursuant to New York law. See N.Y.Civ.Prac.L. & R. § 5001 et seq. Valley appeals this ruling, arguing that under Connecticut choice of law principles Connecticut's prejudgment interest statute would apply. We see no error here, for Valley's interpretation of Connecticut choice of law rules is incorrect. Connecticut follows the Restatement 's approach with respect to prejudgment interest, and applies "[t]he local law of the state selected by [applicable choice of law principles to] determine[ ] whether plaintiff can recover interest, and, if so, the rate, upon damages awarded him for the period between breach of contract and the rendition of judgment." Restatement (Second) Conflict § 207 cmt. e; see PaineWebber Jackson & Curtis, Inc. v. Winters, 579 A.2d 545, 551-53, 22 Conn.App. 640, Conn.App.Ct. 640, 651-56 (1990) (noting that New York CPLR § 5001 is a rule of substantive law to be applied by Connecticut courts when New York law is applicable pursuant to choice of law principles; contrasting this substantive rule with a Connecticut procedural rule designed to encourage settlements). The district court's award of prejudgment interest pursuant to New York law was therefore entirely proper.
 
 Conclusion
 
 49
 We have considered the parties' other arguments, and find them to be without merit. For the reasons stated above, we affirm in part, reverse in part, vacate in part, and remand for further proceedings. The district court is instructed to enter judgment on behalf of Evian in the amount of $367,907.03 plus interest.
 
 
 
 [1]
 See infra Part III.B
 
 
 [2]
 The other causes of action put forward in Evian's complaint are not at issue here
 
 
 [3]
 As explained below, with respect to Valley's claim under MUTPA, the choice of law clause does not require the application of New York law. We note also that the choice of law clause does not purport to cover Valley's tortious interference claim
 
 
 [4]
 In Maxwell Shapiro Woolen Co. v. Amerotron Corp., 158 N.E.2d 875, 339 Mass. 252 (1959), the Supreme Judicial Court indicated that a contractual arbitration provision "may well be broad enough in terms to constitute a valid and reasonable agreement that the law of New York (the State of incorporation of one of the parties to the contract ) is to be the law governing the contract." Id. at 878 (emphasis added). The Court noted in addition that one of the parties did business in New York
 
 
 [5]
 This result is further supported by the long-settled principle of contract law that ambiguities are interpreted against the drafter, see, e.g., Rentways, Inc. v. O'Neill Milk & Cream Co., 126 N.E.2d 271, 273, 308 N.Y. 342, 348 (1955), in this case Evian
 
 
 [6]
 Evian also argues cursorily that Valley is barred from bringing its breach of contract claim because it continued to accept contractual benefits after it had knowledge of the breach. We leave this issue for the consideration of the district court on remand
 
 
 [7]
 See infra Part III.A
 
 
 [8]
 The original uses the word "malicious" rather than "improper." We have altered the quotation to reflect a subsequent change of Massachusetts law. See Dulgarian v. Stone, 652 N.E.2d 603, 609 n. 8, 420 Mass. 843, 851 n. 8 (1995) (noting that, since ELM Medical, the standard has been clarified "by replacing the term malicious with the term improper")
 
 
 [9]
 In making this determination, the Supreme Judicial Court has suggested the factors for decision set forth in § 767 of the Restatement (Second) of Torts as offering helpful guidance. United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20, 24 n. 10, 406 Mass. 811, 817 n. 10 (1990)
 
 
 [10]
 Valley also claims that Evian used improper means or acted with improper motive in interfering with Valley's business relationships, because it conspired with Pepsi to take away Valley's distribution rights so that Pepsi could set higher prices for Evian water without fear of competition from Valley, in violation of antitrust laws. Because Valley points to no evidence sufficient to support its allegation of such a scheme, we conclude that the district court was correct not to credit this claim
 
 
 [11]
 Although Evian sought a declaration that the agreement had expired as of January 31, 1989, the district court determined that the one year extension provision applied, and that the agreement had expired in January of 1990
 
 
 [12]
 Valley's efforts to find ambiguity in the Agreement on this point are unavailing
 
 
 [13]
 We note that Valley offered confusing evidence of its receipt of damaged water relating to other invoices and shipments. (Evian offered evidence in response that Valley had been duly credited for damaged goods.) Valley did not argue to the jury, nor to us on this appeal, that damaged goods relating to other shipments could justify an offset to Evian's damages on Counts I and II, nor did the judge's charge offer the jury such an option
 Without deciding whether Valley had any entitlements relating to such damaged goods, we conclude that no such claim could justify the jury's reduction of Evian's damages on Counts I and II. We express no view as to whether Valley might be entitled to prevail on any such claims upon the remand of this matter to the district court.