(55 Misc. Rep. 561.)

### DOEPFNER v. BOWERS.

(Supreme Court, Special Term, New York County. August, 1907.)

1. LANDLORD AND TENANT—ELECTION TO RENEW—TIME OF ESSENCE.

Where a lease contained a covenant for an additional term on written notice by tenant of his election on or before a certain day named, time is of the essence of the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 271.]

2. SAME—FAILURE TO GIVE NOTICE OF ELECTION.

A tenant occupied premises for business purposes for nearly 10 years under a lease with a covenant for an extension of the lease on written notice at a day fixed, and had expended a large sum in fitting the premises for his business, and had built up a valuable business, and was unexpectedly in a foreign country on the date he was required to give notice of an intent to renew, but gave notice 18 days thereafter, immediately on his return from abroad. *Held,* that equity could give no relief to the tenant as against the condition precedent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 271.]

Action by Otto Doepfner against Lamont M. Bowers to compel specific performance of a provision in a lease authorizing a renewal. Judgment for defendant.

See 102 N. Y. Supp. 920, 53 Misc. Rep. 7.

Arthur F. Cosby, for plaintiff.

George Welwood Murray, for defendant.

BISCHOFF, J. "Hard cases make bad law. Hard cases must not be allowed to make bad equity, any more than bad law." Moore v. Pierson, 6 Iowa, 279, 296, 71 Am. Dec. 409. "Hard cases are the quicksands of the law." Metropolitan Nat. Bank of Kansas City, Mo., v. Campbell Commission Co. (C. C.) 77 Fed. 705. "There is, in all such instances, great danger of the courts drifting away from fundamental grounds upon which a rule of equity is builded, and getting out upon the wide sea of adventure without chart or compass. While rules and principles of equity jurisprudence are constantly expanding in the aspiration for justice in the administration of law by the courts, they should never forget that 'the sprout is to savor of the root, and go the same way.'" Id. It is not without a deep feeling of sympathy for the plaintiff, because of the disappointment and loss which my adverse decision must necessarily entail upon him, that I have reached the conclusion that the facts of the case in hand call for a dismissal of the complaint, a conviction the more difficult because it was only reluctantly arrived at. Courts of equity act on fixed principles, and in this respect their authority is no more to be arbitrarily exercised than is the authority of courts of law. 1 Story, Eq. Juris. § 20. These principles emanate from natural or intuitive justice, and are necessarily of general application, to which particular cases must be made to conform. A court of equity, therefore, must move within these principles and adhere to them, lest the condition of the law be one of uncertainty and chaos, whereby those desirous of conducting themselves according

to law are prevented from knowing what the law is and of regulating their affairs by its demands and commands.

The plaintiff, jointly with his brother, Eugene C. Doepfner, whose interest he has since acquired, leased the corner basement of the premises No. 133 East Thirty-Fourth street, in this city, for the purposes of a drug store. This was in February, 1897, and the lease was for a period of 10 years from May 1, 1897, at an annual rental of $2,000. It contained the following provision:

"The party of the first part (the lessor) hereby covenants and agrees that he will extend this lease for a further term of five (5) years from the date of the expiration thereof at the yearly rental or sum of twenty-two ($2,200.00) hundred dollars, provided the parties of the second part (the lessees) have fully complied with all the covenants of this agreement, and notify the party of the first part in writing on or before six months prior to the date of the expiration of this lease of their intention to take advantage of this option."

The lessees entered into possession of the demised premises on June 1, 1897, the same being unfit for occupancy before that time, and the proportionate rent for the month expired was remitted by the lessor. During their occupancy the lessees fitted the premises up as a drug store and established therein a lucrative business; their investment and the good will of the business at the present time representing a combined value of upward of $20,000. From time to time the lessees expressed themselves toward the lessor's agent, orally, as desirous of accepting the benefit of a renewal of their lease. The last six months of the term began on the 1st day of November, 1906, and the time within which the lessees were required, according to the tenor of their lease, to give notice in writing of the exercise of their option to renew the lease expired on the same day. It is admitted that such a notice was not given until November 19, 1906, and the plaintiff seeks to excuse the failure of an earlier notice by the facts that in July, 1906, he departed for Europe, intending to return before October 1st of the same year; that he was detained partly by illness and partly because he was unable to secure a return passage. He did return home on November 18, 1906, and on the next following day served a written notice to the effect that he desired a renewal of his lease. He furthermore says that, because the lessees were not let into possession of the demised premises until one month after the commencement of the term, as stated in the lease, he supposed that the term was extended by a month, and that the time for the giving of the notice for renewal did not expire until December 1, 1906. The notice given was repudiated by the defendant, the lessor's successor in interest, and this action is brought to compel a specific performance of that provision of the lease which relates to a renewal. Neither the lessor, nor the defendant, as his successor in interest, is in any way complained of as having led the lessees, or the plaintiff into any omission to give notice in writing of their intention to renew or extend the lease before it was actually given; and the single question, therefore, which I am asked to determine, is whether equity will relieve the plaintiff from the result of his omission to give the notice contractually required.

The grounds upon which the plaintiff bases his claim to relief are seriously open to question as to their sufficiency. He could not rea-

sonably have supposed the lease to be extended for the time that he was prevented from taking possession of the demised premises, after having accepted compensation for the delay; and he has at most explained why it was that he did not give the notice for renewal after his departure for Europe in July, 1906. But why such notice was not given during the period of more than nine years before his departure for Europe is left wholly unexplained. Reference to the provision in the lease will show that the notice was not required to be given on November 1, 1906, but on or before that date. Assuming the plaintiff's omission, however, as excusable upon the grounds urged, it is clear that equity cannot reinstate him to his right to a renewal of the lease.

I purposely refrain from reviewing and differentiating the many adjudications based upon a state of facts similar to that of the case in hand, as involving a mere labor of supererogation; and in the treatment of the case I have preferred to subject the facts to the test of principle, rather than of precedent. The case at bar is not one of a condition subsequent, where a penalty or forfeiture is imposed in terrorem, and the principal aim of the contracting parties is to secure a performance of the condition. In such a case equity, regarding intention rather than form, can and will relieve where the penalty or forfeiture was incurred through accident, surprise, or mistake. 2 Story, Eq. Juris. §§ 1314, 1316. The provision for notice constituted a condition precedent, upon the performance of which the plaintiff's right to a renewal was dependent. 2 Story, Eq. Juris. §§ 1302, 1306. "There is a wide distinction between a condition precedent, where no title has vested, and none is to vest until the condition is performed, and a condition subsequent, operating by way of a defeasance. In the former case, equity can give no relief. The failure to perform is an inevitable bar. No right can ever vest. The result is very different where the condition is subsequent. There equity will interpose and relieve against the forfeiture upon the same principles of compensation, where the principle can be applied, giving damages, if damages should be given, and the proper amount can be ascertained." Davis v. Gray, 16 Wall. (U. S.) 229, 21 L. Ed. 447. "When a condition is subsequent, and is broken, relief may be given upon equitable terms; but where it is precedent, and neither fulfilled nor waived, no title vests, and equity can do nothing for the party in default." Giddings v. Northwest. Mut. Ins. Co., 102 U. S. 111, 26 L. Ed. 92. So in Kerr v. Purdy, 51 N. Y. 629, where certain premises were leased for a term of five years, with the privilege to the lessee of purchasing the same at any time within the first three years by paying all arrears of rent and $10,000, it was held that the lessee's right to purchase was dependent upon his tender of the arrears of rent and the stipulated price within the three years, and that the lapse of that time without a compliance with the conditions terminated the privilege.

Nor can it be said that the time within which the plaintiff was to give written notice of his election to accept a renewal of the lease was not of the essence of the contract. His right to elect was a right of option on his part to renew the lease, and he was not bound for the renewal until he had given the notice. Precht v. Howard, 187 N. Y.

136, 79 N. E. 847, 9 L. R. A. (N. S.) 483. The time within which an option is to be exercised is a constituent element of such a contract. It is just that which the parties have contracted for. To say, therefore, that time is not of the essence of such a contract, is but another way of saying that the parties did not mean what they have clearly expressed, and of making and substituting an essentially different contract for the one they made. "Maledicta expositio quæ corrumpit." Time is always of the essence of the contract, if the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contract. 1 Story, Eq. Juris. § 776; 2 Chitty Cont. (11th Am. Ed.) 1068. "If it clearly appears to be the intention of the parties to an agreement that time shall be deemed of the essence of the contract, it must be so considered in equity." 1 Sugden Vend. (8th Am. Ed.) p. 410, c. 6, § 3, subd. 13. "And in all cases where by a contract an option is reserved to a party to accept a thing at a particular time, time is of the essence of the contract, as otherwise the vendor would be the trustee of the purchaser." 2 Whart. Cont. § 888. "Where by the terms of a contract for an option the exercise thereof is limited to a specified and definite time, it is necessary that the option be exercised before the expiration of such time; otherwise, the right is gone. Attempts to exercise the option after the expiration of the time limited, on the ground that in equity time is not of the essence of the contract, have been uniformly met with the answer that, where the parties have seen fit to regard time as an essential element, the courts must likewise so regard it. However true in regard to executed contracts in general, the principle has generally been regarded as having no application to an offer to make a contract which by express agreement is to remain open for a specified time. There is, moreover, a strong inclination on the part of the courts to view any delay with great strictness, on the ground that the party seeking to enforce performance was not bound, while the other party was bound." 21 Am. & Eng. Encyc. of Law (2d Ed.) 931, and cases cited in the notes to the text.

This rule may operate harshly in individual cases, but its soundness must be appreciated when the uncertainty and confusion are considered which would result in the conduct of the manifold affairs of business, were the rule stated not the guide for the observance of obligations contractually assumed. There must be judgment for the defendant for dismissal of the complaint upon the merits, with costs.

Judgment for defendant, with costs.